NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPHINE M. FUNICELLI, | : |
| Plaintiff, | : Civil Action No. 12-06659 (FLW) |
| v. | : |
| | : **OPINION** |
| SUN LIFE FINANCIAL (US) SERVICES COMPANY, INC. | : |
| Defendant. | : |

**WOLFSON, United States District Judge:**

Before the Court is a Motion by Sun Life Financial Services Company, Inc. ("Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(6), to Dismiss the Second Amended Complaint of Josephine M. Funicelli ("Plaintiff") concerning Defendant's March 2012 denial of Plaintiff's application for life insurance benefits allegedly owed under a group life insurance plan ("the Plan") issued by Defendant to Group C Media, Inc., the former employer of Plaintiff's deceased husband ("Mr. Funicelli"). Interpretation of the Plan is governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA").

For the reasons that follow, this Court finds that (i) Plaintiff has failed to state a claim of entitlement to insurance benefits under ERISA, (ii) Plaintiff has failed to state a claim under a theory of either equitable estoppel or waiver under federal law, and, thus, (iii) Plaintiff has failed to state a claim of entitlement to attorneys' fees under ERISA. Accordingly, Plaintiff's Second Amended Complaint is dismissed in its entirety.

1

I. Background

At the stage of a motion to dismiss, all of the factual allegations in the Complaint are taken as true. Accordingly, the facts of this case considered by the Court, as presented in Plaintiff's Second Amended Complaint, are as follows. Plaintiff's deceased husband, Mr. Funicelli, was insured under a group life insurance plan, issued to his employer, Group C Media Inc., by Defendant. Mr. Funicelli's coverage under the Plan began sometime shortly after he was hired on October 23, 2006. Plaintiff was subsequently made the beneficiary of the Plan on July 2, 2007, and remained so until coverage expired. As will be explained below, the date at which coverage ultimately expired is disputed.

Returning to the facts presented in the Complaint, Plaintiff further asserts that Mr. Funicelli continued actively working at Group C Media until July 10, 2009, at which time he left work in order to undergo surgical treatment for cancer. At this point in July of 2009, Plaintiff alleges that Mr. Funicelli still hoped to be able to return to work after recovering from his surgery and other cancer treatments. Indeed, in the year immediately following the surgery, Group C Media continued to pay insurance premiums for Mr. Funicelli as part of its group plan. On July 10, 2010, however, Plaintiff alleges that it had become apparent that Mr. Funicelli would never be able to return to work, and, therefore, Plaintiff alleges it was on this date that Mr. Funicelli became "totally disabled" as defined under the policy.[1] Despite the fact that Mr.

---

[1] Under the Plan, an employee meets the definition of "Total Disability" "if an injury or sickness prevents [the employee] from performing all the main duties of any occupation that [the employee is] or become[s] qualified for by education, training or experience." The term "disability" is used in several places throughout the Plan, most notably the Termination Provision, but is not defined. "Actively at Work" is separately defined as "1. Working at the Employer's usual pace of business or at such place or places that the Employer's normal course of business may require; 2. Performing all of the duties of your job on a full-time basis; and 3.

Funicelli was now totally disabled, due to a clerical error or some other oversight, Group C Media continued to pay premiums to Defendant to insure Mr. Funicelli under the Plan after July 10, 2010.

Mr. Funicelli suffered from cancer for 8 more months after he became totally disabled, until, on March 9, 2011, he died as a result of complications from his illness. At this point, Group C Media discontinued premium payments for Mr. Funicelli's coverage under the Plan. Shortly thereafter, Plaintiff attempted to claim life insurance benefits under the Plan from Defendant. Defendant denied Plaintiff's claim on March 28, 2011, stating that Mr. Funicelli was not covered under the Plan at the time of his death. Defendant explained that Mr. Funicelli's coverage had been discontinued under the Termination Provision of the Plan as of July 10, 2010, one year to the day after Mr. Funicelli stopped being actively at work. Defendant further explained that after the termination of coverage under the Plan, Mr. Funicelli had neither applied for additional coverage under the Policy's Extended Life Insurance Benefit provision, nor applied to convert his group plan to an individual policy.

---

Not [being] confined in any institution providing care or treatment of physical or mental infirmities." Defendant attempts to muddy the waters by asserting that Plaintiff's Complaint is inconsistent in its reporting of the alleged onset date of Mr. Funicelli's total disability. It is, however, clear on the face of the Complaint that Plaintiff makes a distinction between the onset of "disability" on July 10, 2009, the date on which Mr. Funicelli stopped being actively at work but anticipated returning to work in the future, and the onset of "total disability" on July 10, 2010, the date on which it was determined that Mr. Funicelli, who had already not attended work for a year due to illness, would never again return to work. Rule 12(b)(6) motions are determined on the pleadings. For the purposes of the present motion to dismiss, therefore, this Court will use the July 10, 2010 date for the onset of Mr. Funicelli's total disability. It is clear from Defendant's usage of the term "total disability" in briefing and in administrative proceedings below that Defendant makes no distinction between "disability" and "total disability," and in fact conflates both with the date "no longer actively at work." Plaintiff disputes this interpretation. Because the Court finds other grounds for granting Defendant's Motion to Dismiss, I will not consider Defendant's arguments equating the various terms and contending that Plaintiff's claim of a July 2010 total disability onset date was forfeited by Plaintiff's alleged representations in prior administrative proceedings that Mr. Funicelli's total disability began in July 2009.

3

After retaining counsel, on July 12, 2011, Plaintiff followed the administrative procedure set out under the Plan and appealed the adverse decision to Defendant's ERISA Appeal Unit for Group Life, claiming that at the time of his death, Mr. Funicelli was insured under the "Extended Life Insurance Benefit" provision of his policy with Defendant, and that Plaintiff was accordingly entitled to recover the life insurance benefits due under the Plan. On September 15, 2011, Defendant's Appeal Unit upheld the denial of Plaintiff's claim on the grounds that Mr. Funicelli had never applied for the Extended Life Insurance Benefit and had otherwise not complied with the requirements of the Extended Benefit provision. Specifically, Defendant's Appeal Unit explained that Mr. Funicelli failed to submit the required proofs of his disability to Defendant.

Under the Extended Benefit provision, a totally disabled plan participant whose coverage has been terminated may apply for continued coverage provided that he or she submits proof to Defendant that he or she, *inter alia*, has been totally disabled for 9 months. Mr. Funicelli died after only 8 months of total disability, and therefore necessarily never submitted proof of his total disability after the required 9-month waiting period. Plaintiff filed the present action against Defendant in New Jersey's Monmouth County Superior Court a year after the Appeal Unit's ruling, on September 19, 2012, alleging, among other state law causes of action, that Mr. Funicelli's death prior to having been totally disabled for 9 months made compliance with the proof requirement of the Extended Life Insurance Benefit provision impossible. Plaintiff contends that because it was impossible for Mr. Funicelli to submit the required proofs and Mr. Funicelli met all other requirements for the Extended Benefit, coverage was extended under the Plan despite Mr. Funicelli's failure to submit proofs. Accordingly, Plaintiff alleges that Defendant wrongfully denied Plaintiff the benefits due under the terms of the Plan.

II. Procedural History

This action was removed from Monmouth County Superior Court by Defendant Sun Life Financial Services Company, Inc., on October 22, 2012. Plaintiff's First Amended Complaint from the state court below alleged only state law causes of action, which were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant accordingly moved to dismiss the Complaint on preemption grounds on October 31, 2012. After briefing, the Court granted Defendant's motion and dismissed Plaintiff's First Amended Complaint in a Letter Order issued on May 22, 2013. In the same Letter Order, the Court also denied as premature Defendant's request to dismiss Plaintiff's prospective ERISA claims as futile, and granted Plaintiff leave to file another Amended Complaint. Plaintiff filed her Second Amended Complaint, alleging only ERISA causes of action, on June 5, 2013. Defendant responded on June 17, 2013, with a Motion to Dismiss the new Complaint. After Defendant's Motion had been fully briefed and opposed, the Court took notice of an apparently applicable provision of the disputed Plan, which had not been mentioned by either party. The Court requested comment from both Plaintiff and Defendant on the provision by letter brief, which was received on July 26, 2013. Defendant's Motion to Dismiss the Second Amended Complaint is now before the Court.

III. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As the Third Circuit has stated, "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234 (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 547 (2007)) (internal quotation marks omitted). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiff's claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004). While the merits of this case concern the denial by a plan administrator vested with discretion of benefits under a life insurance plan governed by ERISA and thus would be subject to a more deferential standard of review, the motion now before the Court is to dismiss the Complaint under Rule 12(b)(6). The Court's analysis will accordingly be restricted to the sufficiency of the pleadings under the standards enunciated in *Twombly* and *Iqbal*.

IV. Jurisdiction

This Court has jurisdiction pursuant to the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), which provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce

his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

V. Entitlement to Benefits Under ERISA (Plaintiff's "First Claim for Relief")

To state a claim for denial of benefits under ERISA, Plaintiff must allege that she is a plan participant or beneficiary to whom some benefit was due under the terms of the plan, which was wrongfully denied by the defendant plan administrator.[2] In her First Claim for Relief, Plaintiff alleges and it is not disputed that she was the named beneficiary on Mr. Funicelli's group life insurance plan issued by Defendant. [Complaint, ¶ 8]. Plaintiff further alleges that she was entitled to a life insurance benefit upon the death of Mr. Funicelli "[b]ased on the express policy provisions of Group C Media Inc.'s Plan" because Mr. Funicelli "died within the period for which he was still covered as he had not yet been permanently disabled for nine months

---

[2] When considering the merits of a claim, the Supreme Court has long held that a denial of benefits under ERISA is to be reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Viera v. Life Ins. Co. of North America*, 642 F.3d 407, 413 (3d Cir. 2011). Where the plan affords the administrator discretionary authority, however, the administrator's interpretation of the plan "will not be dismissed if reasonable." *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d. Cir. 1997) (quoting *Firestone*, 489 U.S. at 111). In other words, when a plan administrator has discretion to determine a claimant's eligibility for benefits, the plan administrator's decision is subject to review under an arbitrary and capricious standard. *Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009). As discussed in Section III, *supra*, however, the motion now before the court is to dismiss Plaintiff's claims on the pleadings – before reaching the merits. Accordingly, while noting the findings in the administrative proceeding below invoked by Defendant and the allegations of arbitrary and capricious action made by Plaintiff, the Court concerns itself in considering the present Motion with whether Plaintiff has alleged all the necessary elements to state a claim for relief, not with the reasonableness of the administrator's decision below.

before his death." [Complaint, ¶ 29]. In support of this position, Plaintiff relies upon the Extended Life Insurance Benefit section of the policy, which provides in relevant part:

> **Extended Benefit**
> Subject to the "Termination Extension" section, if you are Totally Disabled on the date your insurance terminates, we will extend your Life insurance coverage without payment of further premiums while you are Totally Disabled if:
> 1. You become Totally Disabled:
>     a) while you are insured under the policy; and
>     b) before the effective date of your retirement;
> 2. You give us initial Proof that meets these requirements:
>     a) it shows that your Total Disability has lasted without interruption for at least 9 months; and
>     b) you submit this Proof within 12 months after your Total Disability starts;
> 3. You submit further Proof that meets these requirements:
>     a) it shows that you are still Totally Disabled; and
>     b) we receive such Proof each year in the 3 months before the anniversary of the date that we approved your initial claim for this Extended Benefit; and
> 4. We approve and continue to approve your claim.

[Group Life Certificate, p. 10, GC-C-7]. Plaintiff's Complaint alleges, and it is undisputed that under the Termination Provision of the Plan, Mr. Funicelli's coverage was extended for one year, to July 10, 2010, from the day he stopped being actively at work at Group C Media on July 10, 2009.[3] Assuming the date of onset of total disability alleged in the Complaint of July 10, 2010, Plaintiff's claim meets the first set of eligibility requirements for the Extended Benefit, namely

---

[3] The applicable language of the Plan provision provides:
> **Termination of Employee Insurance**
> Insurance coverage for you will automatically cease on the earliest date shown below:
> 1. On the date you are no longer Actively At Work, except that:
>     a) while you are sick or injured, your employment will be deemed to continue for up to 12 months from the date your disability began, as long as your Employer keeps paying premiums on your behalf.

[Group Life Certificate, p. 23, GC-C-26]. The Complaint alleges and Defendant does not dispute that Mr. Funicelli stopped being actively at work on July 10, 2009, and that Mr. Funicelli's employer continued paying premiums for the 12 months after that date. [Complaint, ¶¶ 16, 14]. As discussed in note 1, *supra*, there is some dispute between the parties about whether there is a distinction between the "last date actively at work," the "date of onset of disability," and the "date of onset of total disability," but the Court does not need to decide these issues under the Plan in order to rule on Defendant's Motion to Dismiss.

Mr. Funicelli became totally disabled while covered under the Plan and before the effective date of his retirement.

It is in meeting the second set of eligibility requirements that Plaintiff's claim fails. The Second Amended Complaint contains no allegation that Mr. Funicelli's total disability lasted without interruption for at least 9 months – to the contrary it alleges that he died after only 8 months of total disability – and it contains no allegation that Mr. Funicelli submitted proof of his total disability within 12 months of his onset date – to the contrary it admits that no proofs were submitted because to do so would have been impossible. The administrative decision of Defendant's Appeal Unit below considers the earlier, July 10, 2009 date to be the date of the onset of Mr. Funicelli's totally disability, but otherwise finds fault with the same elements of Plaintiff's claim: Mr. Funicelli never submitted proof of total disability to Defendant and Defendant therefore never approved him for coverage under the Extended Benefit provision before Plaintiff attempted to collect benefits. [Letter of Kristen Goodwin dated September 15, 2011, at 3].

Now using the July 10, 2010 date alleged in the Complaint, this Court agrees with Plaintiff that requirements 2(a) and 2(b) of the Extended Life Insurance Benefit provision were impossible to fulfill. Plaintiff has not, however, pointed to any Plan language which suggests that impossibility excuses an applicant from meeting the Plan requirements. The Second Amended Complaint, accordingly, states no claim for failure to pay benefits due under an ERISA plan based upon the clause of the Extended Benefits provision excerpted above. Moreover, the Court notes its disagreement with Plaintiff's contention that this provision is unjust in requiring a disabled person to survive for a full 9 months after becoming totally disabled in order to claim extended life insurance benefits, because, as explained below, the Plan explicitly provides for

situations in which prospective applicants die before 9 months of total disability have elapsed; Plaintiff was capable of making an application for extended benefits under the Plan.

It appears that neither of the parties carefully considered the entire Plan before drafting their submissions, because both parties ignored the policy provision most applicable to the case at bar until it was brought to their attention by the Court. Firstly, Plaintiff's Complaint presumes that the only way for Mr. Funicelli to enjoy extended coverage under the Extended Life Insurance Benefit provision would have been to survive for 9 months after becoming totally disabled and to submit proof of his total disability after that time. Secondly, in its Reply, Defendant baldly contends that "[t]here is no provision which waives the nine month requirement in the event of death." [Def. Rep., 2]. Both Plaintiff and Defendant are mistaken. As previously identified by the Court to the parties, there is an explicit "Requirements Upon Death" clause within the Extended Benefit provision which waives the 9-month requirement, provided that certain other conditions are met. The relevant language provides:

> **Requirements Upon Death**
> If you die before you are approved for coverage under this extension, we will consider your Life Insurance to have been extended if we receive Proof within one year of your death that:
> 1. Premium payments for your insurance stopped while you were Totally Disabled;
> 2. You died within one year after your Total Disability started;
> 3. Your Total Disability lasted without Interruption until your death; and
> 4. You would have qualified for this extension except that either;
>      a) your Total Disability had not lasted for at least 9 months; or
>      b) we had not yet approved your initial Proof of Total Disability.

[Group Life Certificate, p. 11, GC-C-7A]. When the Court brought this provision to the parties' attention, Plaintiff in briefing asserted that coverage was extended under this provision as well. While it is true that arguments raised for the first time in briefing are not properly before the Court on a motion to dismiss, Plaintiff's Complaint claims benefits under the Extended Life Insurance Benefit provision of which the Requirements Upon Death clause is a part. Being

mindful of the obligation of the courts, when considering a motion to dismiss to "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief," *Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), I will decide whether the Second Amended Complaint states a claim for relief under the Requirements Upon Death clause of the Extended Benefits provision as well.

Whether Plaintiff must allege the first proof requirement under this clause is disputed. Defendant, in briefing, contends that "the unambiguous Plan language states that the Requirements Upon Death section does not apply if the employer paid premiums for the person during the claimed period of disability." [Letter of Joshua Bachrach, dated July 26, 2013, at 3]. Therefore, under the Defendant's reading of the Plan, because the Complaint alleges that Group C Media continued paying premiums until the date of Mr. Funicelli's death, it cannot possibility meet the first requirement and cannot therefore state a claim. This Court disagrees. A provision cited by Defendant in an earlier filing clearly establishes that such a clerical error could would not, by itself, destroy otherwise existing coverage. The relevant language of "Part 13: General Provisions" provides:

> **Clerical Error**
> Clerical errors in connection with the policy or delays in keeping records for the policy whether by us, the Policyholder, or the Employer:
> 1. Will not terminate insurance that would otherwise have been effective;
> 2. Will not continue insurance that would otherwise have ceased or should not have been in effect.

[Group Life Certificate, p. 24, GC-C-27]. The immediately prior clause, "Limit of Premium Refunds," makes clear that the Plan countenances that premiums may be paid in error. Read together, this Court understands the General Provision on Clerical Error to at least arguably excuse the first of the Requirements Upon Death provided that an applicant was qualified and compliant in all other respects. I will not, however, decide this issue of interpretation directly,

11

because I find that Plaintiff fails to state a claim under the Requirements Upon Death clause on other grounds.

The facts alleged in the Complaint also show that Mr. Funicelli met Requirements Upon Death 2, 3, and 4(a). [Complaint, ¶¶ 13, 16, 19, 22]. The missing element from the Complaint is therefore, not an allegation that Mr. Funicelli was eligible for coverage under the Extended Life Insurance Benefit through the Requirements Upon Death clause, but the much more basic allegation that Mr. Funicelli *actually applied* for the coverage. The Plan allows the survivors of policyholders who have died before having been totally disabled for 9 months to extend the decedent's coverage. It explicitly provides that "we[, the insurance company,] will consider your[, the policyholder's,] Life Insurance to have been extended *if we receive Proof* within one year" that the policyholder met the four proof requirements of the Requirements Upon Death clause. (emphasis added). Nowhere in the Complaint does the Plaintiff allege that she made the required submissions indicating to Defendant her eligibility for extended coverage under the clause. Indeed, the attached administrative record, and the claims in the Second Amended Complaint make it clear that Plaintiff never attempted to make the required proofs for this type of extended coverage, nor was even aware that such coverage existed. As explained when considering Plaintiff's equitable arguments below, ignorance of the terms of the Plan is no excuse for Plaintiff's failure to submit the required proofs, and, in the absence of some Plan language indicating that Plaintiff might automatically become eligible for benefits without first applying for the extension of coverage, the Second Amended Complaint cannot be read to allege an entitlement to benefits.

In summary, Plaintiff does not allege to have ever submitted the proofs necessary to qualify for coverage under the Extended Life Insurance Benefit provision, Defendant never had

an opportunity to evaluate Plaintiff's proofs in the administrative proceedings below, and therefore never denied Plaintiff's claim on the basis of those proofs. Accordingly, Plaintiff's Complaint fails to allege that Plaintiff was entitled to benefits under the plan and does not state a claim for denial of benefits cognizable under ERISA.

VI. Equitable Estoppel and Waiver (Plaintiff's "Second Claim for Relief")

As her second cause of action, "Plaintiff asserts that the Plan ans [sic] its Administrator are estopped and/or have waived the right to claim that FUNICEELI's [sic] life insurance policy was terminated when the Plan and its Administrator continued to accept premiums paid for that insurance after they claim FUNICELLI's coverage was cancelled." [Complaint, ¶ 31]. As the applicability of the doctrines of equitable estoppel and waiver in the ERISA context may be different in this Circuit, I shall address Plaintiff's claim under each in turn.

A. Estoppel

It is well established law in the Third Circuit that beneficiaries may raise equitable estoppel claims under ERISA. ERISA § 502(a)(3) provides that "a beneficiary may obtain ... appropriate equitable relief ... to redress [ERISA] violations or ... to enforce any provisions of [ERISA]." *Pell v. E.I. DuPont de Nemours & Co., Inc.,* 539 F.3d 292, 300 (3d Cir. 2008) (alterations in original) (quoting 29 U.S.C. § 1132(a)(3)). "A beneficiary can make out a claim for appropriate equitable relief based on a theory of equitable estoppel." *Id.* (citation and internal quotation marks omitted). But "[t]o succeed under this theory of relief, an ERISA plaintiff must establish (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the

representation, and (3) extraordinary circumstances." *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 235 (3d Cir. 1994). Moreover, the employees "bear the burden of proof on each estoppel element." *Int'l Union, U.A.W. v. Skinner Engine Co.,* 188 F.3d 130, 152 (3d Cir. 1999). To survive Defendant's Motion to Dismiss, Plaintiff's equitable estoppel claim must include all three elements.

Beginning with the first required element, Plaintiff contends that Defendant misrepresented to Plaintiff that Mr. Funicelli's coverage was still in effect by its act of accepting and retaining the insurance premiums paid by Group C Media, Mr. Funicelli's employer. Under ERISA "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed [benefits] decision." *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995) (quoting *Fischer v. Philadelphia Elec. Co.,* 994 F.2d at 135). I have discovered no precedent on whether the mere acceptance of premiums can constitute a material misrepresentation of continued coverage under ERISA, but need not decide the question because I find that Plaintiff has pleaded neither of the remaining two elements of equitable estoppel, and accordingly Plaintiff's claim fails.

The federal law governing employer provided insurance benefits was designed to protect employees by requiring greater transparency to beneficiaries on the nature of their benefits. "ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *In re Unisys Corp. Retiree Medical Benefit "ERISAII"I Litig.,* 58 F.3d 896, 902 (3d Cir. 1995) (citation omitted); *Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 F. App'x 570, 574 (3d Cir. 2011). One consequence of the law's focus on written plans was the judicial necessity to give full effect to plan language

upon review. The Third Circuit has long made clear that "[t]he written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings." *Unisys,* 58 F.3d at 902; *see also Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1163 (3d Cir. 1990) (stating that extrinsic evidence may not be introduced to vary the express terms of a plan). Concordantly, it is equally well established that "ERISA plan participants have a duty to inform themselves of the details provided in their plans." *Jordan v. Fed. Exp. Corp.,* 116 F.3d 1005, 1016 (3d Cir. 1997). "Indeed, it is unreasonable for a plan participant to rely upon an employer's representation as to the contents of the Plan where the participant is in possession of a plan document containing express terms regarding the subject of the representation." *Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 F. App'x 570, 574-75 (3d Cir. 2011) (citing *Unisys,* 58 F.3d at 907–08).

In the case now before the Court, Plaintiff could not have reasonably relied upon Defendant's continued acceptance of premiums as evidence of continued coverage, when the explicit language of the Plan in Plaintiff's possession indicates that coverage had terminated and could only be revived upon application accompanied by proofs provided by Plaintiff. The Plan's Termination Provision extended Mr. Funicelli's coverage to July 10, 2010. In order to continue life insurance coverage under the Extended Life Insurance Benefit provision after that date, an application to Defendant accompanied by proofs was required. It is not alleged that any such application was made. Accordingly, the unambiguous language of the Plan in Plaintiff's possession stated that Mr. Funicelli's coverage ended on July 10, 2010, eight months before his death. Moreover even if there were some ambiguity about the existence of extended coverage, the explicit language of the Plan informs prospective plaintiffs that "[c]lerical errors in connection with the policy . . . by us . . . [w]ill not continue insurance that would otherwise have

ceased or should not have been in effect." There was, accordingly, also explicit notice within the Plan that erroneous handling of the billing process on a group plan could not override the Plan's coverage termination language.

The absence from the Complaint of the third element of an estoppel claim, the presence of extraordinary circumstances, is most readily apparent. The Third Circuit has long held that "'extraordinary circumstances' generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003) (quoting *Jordan v. Federal Express Corp.,* 116 F.3d 1005, 1011 (3d Cir. 1997)). Plaintiff has pleaded no such extraordinary circumstances, and, to the contrary, relies solely upon a billing error of a sort that, unfortunately, is almost certainly all too common in the administration of the nation's millions of employer provided insurance plans. In sum, Plaintiff's Second Claim for Relief fails under the theory of equitable estoppel because it contains neither an allegation that Plaintiff reasonably relied upon Defendant's erroneous acceptance of premiums, nor an allegation that the erroneous acceptance of premiums constituted "extraordinary circumstances" in the handling of an ERISA Plan.

B. Waiver

The law of the Third Circuit governing the applicability of waiver in the ERISA context is much less well settled. While it appears that the Court of Appeals itself has not addressed the issue, district courts within the Third Circuit have traditionally conducted a case-by-case approach in making waiver determinations under ERISA. *See Viera v. Life Ins. Co. of North*

16

*America*, 2010 WL 1407312, at *11–12 (E.D. Pa. Apr. 6, 2010), *aff'd, in part, rev'd, in part*, on other grounds, 642 F.3d 407 (3d Cir. 2011), (citing *Kaelin v. Tenet Employee Ben. Plan*, 2006 WL 2382005, at *7 (E.D. Pa. Aug. 16, 2009) (noting that no precedent exists in the Third Circuit as to whether the common law principle of waiver applies in the ERISA context); *McLeod v. Hartford Life and Acc. Ins. Co.*, 2004 WL 2203711, at *3 (E.D. Pa. Sept. 27, 2004) (explaining that no consensus exists within the Third Circuit as to whether waiver applies in the ERISA context and noting that courts in the Eastern District of Pennsylvania have conducted a case-by-case approach in determining whether waiver should apply); *Pergosky v. Life Ins. Co. of N. Am.*, 2003 WL 1544582, at *6 (E.D. Pa. Mar. 24, 2003) (same) (collecting cases).

The consistent trend among the district courts is to refuse to apply waiver in ERISA cases where it would expand the scope of coverage under the ERISA plan to an otherwise ineligible participant. *Viera*, 2010 WL 1407312, at *11–12 (citing *McLeod*, 2004 WL 2203711, at *3 (applying waiver where it would not expand coverage beyond the provisions of the relevant plan); *see also Pergosky*, 2003 WL 1544582 ("The Court . . . denies waiver in this instant action . . . [where] [a]pplying waiver would expand coverage beyond the provisions of the ERISA group Plan. . . . In this case, despite Defendants' mistake and continued receipt of Plaintiff's premiums for more than ten years, waiver is not available because it would rewrite the Plan to include . . . something it clearly excludes.")). This is consistent with the rule adopted in the Second Circuit. *See Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375, 382 (2d Cir. 2002) (finding waiver when it would not create coverage where none would otherwise exist); *Juliano v. Health Maintenance Organization of New Jersey, Inc.*, 221 F.3d 279, (2d Cir. 2000) ("[e]ven when insurance coverage is denied, where the issue is the existence or nonexistence of coverage

17

(e.g. the insuring clause and exclusions), the doctrine of waiver is simply inapplicable.") (internal citations omitted).

This court adopts the approach uniformly practiced by the district courts of this Circuit, and declines to apply the doctrine of waiver to the present case. To do otherwise would create coverage under the Plan that would not have been permitted by the Plan's language. It is clear from the Termination Provision that Mr. Funicelli's coverage ended on July 10, 2010. It is equally clear from the pleadings that neither Mr. Funicelli nor Plaintiff applied for extended coverage before attempting to claim life insurance benefits. Defendant erroneously continued accepting premiums from Group C Media for eight months after Mr. Funicelli's policy terminated. This act alone cannot waive the Plan's explicit language governing termination.

VII. Entitlement to Attorneys' Fees Under ERISA (Plaintiff's "Third Claim for Relief")

29 U.S.C. § 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" in a claim by a beneficiary for denial of benefits. As discussed, *supra*, Plaintiff has failed to state a claim for denial of benefits under § 1132(a)(1)(B), and therefore necessarily cannot state a claim for entitlement to attorneys' fees in the absence of a surviving underlying claim for benefits. Therefore, the Second Amended Complaint also fails to state a claim for attorneys' fees under ERISA.

Conclusion

For the foregoing reasons, this Court finds that Plaintiff's Second Amended Complaint fails to state a claim for denial of benefits, equitable estoppel, waiver, or attorneys' fees under the Employee Retirement Income Security Act of 1974. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint is, therefore, dismissed in its entirety.

Order to follow.

Dated: ____1/14/2014____           _____/s/ Freda L. Wolfson____
                                    The Honorable Freda L. Wolfson
                                    United States District Judge